# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES HUNT,<br><br>    Plaintiff,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE<br><br>and<br><br>UNITED STATES OFFICE OF SPECIAL COUNSEL,<br><br>    Defendants. | Civil Action 08-01533 (HHK) |

## MEMORANDUM OPINION

  James Hunt, a former Chief Administrative Law Judge at the United States Department of Agriculture ("Department"), proceeding pro se, brings this action against the Department and the United States Office of Special Counsel ("OSC") (collectively, "defendants"). Hunt's principal claims are that he was deprived unlawfully of the compensation to which he was entitled as determined by the Office of Personnel Management ("OPM"), that the Department failed to conduct a hearing before compensating him at a rate lower than that established by OPM, and that the OSC refused to seek a hearing before the Merits Systems Protection Board ("Board") regarding various complaints that Hunt had filed with the OSC. Hunt's claims are grounded on alleged violations of the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq.*, and the Fifth Amendment.

Before the Court are defendants' motion to dismiss Hunt's amended complaint on several grounds, including defendants' assertion that this Court is unable to exercise subject matter jurisdiction over Hunt's claims [#13]. Upon consideration of the motion, the opposition thereto, and the record of this case, the Court concludes that defendants' motion should be granted.

## I. BACKGROUND

Hunt became an Administrative Law Judge ("ALJ") with the Department in 1989 and was appointed Chief Administrative Law Judge ("CALJ") in 1999, when he was 67 years of age. He retired in 2003.

At the time of Hunt's appointment as CALJ, the OPM classified the pay level for the Department's CALJ position at the AL-2 level. The Department, however, paid Hunt at a decreased AL-3 level. Hunt alleges that the Department preferred to appoint younger ALJs to the position of CALJ and that its reduction of his compensation constituted age discrimination in violation of 5 U.S.C. § 2302(b)(1)(B).[1] Hunt points out that both his predecessor and successor were in their early fifties when appointed to the CALJ position, and both were paid at the higher AL-2 level.

Following his retirement, Hunt filed a complaint with the Board (hereinafter "*Hunt I*") under 5 U.S.C. § 7521(a),[2] alleging, among other things, that the Department's reclassification of

---

[1] 5 U.S.C. § 2302(b)(1)(B) provides that "[a]ny employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority . . . discriminate for or against any employee . . . on the basis of age." 5 U.S.C. § 2302(b)(1)(B).

[2] Actions against ALJs, including reductions in pay, are appealable to the Board under 5 U.S.C. § 7521. 5 U.S.C. § 7521(a) states that "[a]n action may be taken against an administrative law judge . . . by the agency in which the administrative law judge is employed only for good cause established and determined by the Merit Systems Protection Board on the

2

the CALJ position's compensation violated 5 U.S.C. § 5372(b)(2) because only the Office of Personnel Management has the authority to determine the level of compensation for ALJs.[3] Hunt's complaint with the Board also alleged that the Department constructively removed him from his position and attempted to influence his judicial independence. The Board ruled against Hunt. With respect to Hunt's claim that he was paid at a reduced level, the Board stated the following:

> Petitioner applied for and accepted the CALJ position fully aware of the grade level of the position, notwithstanding that the position had previously carried a higher grade level. And once he encumbered the position, he continued to accept his pay based on the pay level he had agreed to receive when he accepted the position; at no time did the agency downgrade the position or reduce his pay. Thus he cannot complain that the agency did not meet its end of the bargain or that the lower grade made the job too difficult or unpleasant to endure. Accordingly, he has not alleged facts, which if proved, could establish Board jurisdiction over his appeal.

Defs.' Mot. to Dismiss, Ex. 1 at 6. On February 7, 2005, the Board issued a Final Order denying Hunt's petition to review the initial decision, and on February 9, 2006, the United States Court of Appeals for the Federal Circuit affirmed the Board's decision.

Hunt filed a second complaint with the Board (hereinafter "*Hunt II*") on April 5, 2006. Hunt again alleged that he received less pay than he was entitled to, this time pursuant to 5 U.S.C. § 7512.[4] *Id.*, Ex. 4 at 1-2. The Board dismissed Hunt's complaint for lack of jurisdiction,

---

record after opportunity for hearing before the Board." 5 U.S.C. § 7521(a).

[3] 5 U.S.C. § 5372 states that "[t]he Office of Personnel Management shall determine . . . the level in which each administrative-law-judge position shall be placed." 5 U.S.C. § 5372(b)(2).

[4] Actions, including reductions in pay, against individuals who meet 5 U.S.C. § 7511's definition of "employee" are appealable to the Board under 5 U.S.C. § 7512.

stating that because Hunt was an ALJ, his complaint must be brought under section 7521, and even if Hunt were able to establish jurisdiction under section 7512, the case would still be dismissed because Hunt would not be able to show an actual reduction in pay.[5] The Board issued a Final Order in the matter on January 10, 2007, and the Federal Circuit affirmed on October 4, 2007.

Hunt alleges that while *Hunt I* was pending, his successor as CALJ, Mark Hillson, offered him a position as a part-time ALJ. Compl., Ex. 2 at 2. Hunt informed Hillson that he was in the process of registering for the "senior" ALJ register but would accept the offer when the process was complete. Hunt also informed Hillson that he filed a complaint against the Department that was still pending. According to Hunt, Hillson was not aware of this action. When Hunt later informed Hillson that he had been placed on the register, Hillson withdrew the employment offer.

Hunt then filed a complaint against the Department with the OSC (hereinafter "*Hunt III*"), again alleging a reduction in pay as well as age discrimination and retaliation. Hunt alleged that the Department's refusal to hire him was in retaliation for filing his complaint with the Board, in violation of 5 U.S.C. § 2302(b)(9)(A).[6] Compl. ¶¶ 23-24. The OSC did not seek a hearing before the Board with regard to Hunt's complaint, but rather issued its findings in a letter

---

[5] Section 7512 specifically states that it "does not apply to . . . an action initiated under section . . . 7521." 5 U.S.C. § 7512(E).

[6] 5 U.S.C. § 2302(b)(9)(A) states that "[a]ny employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority . . . take or fail to take, or threaten to take or fail to take, any personnel action against any employee . . . because of . . . the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation." 5 U.S.C. § 2302(b)(9)(A).

4

dated June 11, 2008.  Compl., Ex. 1.  The OSC determined that (1) the Department had the authority to downgrade the OPM-authorized pay level for the CALJ position, (2) the pay level for ALJs at the Department was downgraded prior to Hunt's appointment, (3) the OSC had no jurisdiction over claims of age discrimination, (4) the Department did not retaliate against Hunt for filing his complaint with the Board, and (5) the Department had not reduced Hunt's lawfully authorized compensation.  Compl. ¶ 26.

This action followed Hunt *Hunt III*.

## II.  LEGAL STANDARD

Defendants move to dismiss Hunt's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[7]  A motion to dismiss under Rule 12(b)(1) "tests whether the court has subject matter jurisdiction over the action." *Bernard v. U.S. Dep't of Def.*, 362 F. Supp. 2d 272, 277 (D.D.C. 2005).  Under Rule 12(b)(1), "the plaintiff bears the burden of establishing the factual predicates of jurisdiction by a preponderance of the evidence." *Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  "The court, in turn, has an 'affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority.'" *Abu Ali v. Gonzales*, 387 F. Supp. 2d 16, 17 (D.D.C. 2005) (quoting *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001)).  When deciding a motion to dismiss under Rule 12(b)(1), a court may

---

[7]  Defendants also move to dismiss Hunt's complaint on various other grounds, including lack of standing, res judicata, and collateral estoppel. The Court need not address these grounds for dismissal given its determination that this Court is without subject matter jurisdiction.

5

consider matters outside the pleadings. *See Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992)**.**

Under Rule 12(b)(6), a court may dismiss a complaint, or any portion of it, for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Although pleadings filed by pro se litigants are to be liberally construed, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), a pro se litigant may not ignore the Federal Rules of Civil Procedure. *Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987). A court considering a motion to dismiss must assume that all factual allegations are true, even if they are doubtful. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief,'" however, "requires more than labels and conclusions . . . . Factual allegations must be enough to raise a right of relief above the speculative level." *Id.* (internal citations omitted).

### III. ANALYSIS

Defendants contend that Hunt's claims against the Department and against the OSC must be dismissed because this Court lacks jurisdiction. Although the parties analyze the claims against the Department and the claims against the OSC together, the claims against the parties raise distinct legal and factual issues. Accordingly, the Court will analyze the claims against each party separately.

**A.     Hunt's Claims against the Department**

   **1.     APA Claim**

The Department alleges that Hunt's claim that his compensation as CALJ was illegally reduced is barred by its sovereign immunity and that Hunt's reliance on the APA as a waiver of that immunity is misplaced. Defendants argue that "[t]he APA excludes from its waiver of

6

sovereign immunity . . . claims for which an adequate remedy is available elsewhere." Defs.' Mot. to Dismiss at 6 (quoting *Fornaro v. James*, 416 F.3d 63, 66 (D.C. Cir. 2005)). Such a remedy is available, defendants maintain, by virtue of various provisions of the Civil Service Reform Act of 1978 ("CSRA"), Pub. L. 95-454, 92 Stat. 1111. Indeed, defendants assert that the remedy afforded by the CSRA is not only available to resolve an ALJ's complaints regarding reductions in compensation, but is the the exclusive remedy for doing so.

Hunt rejoins that "his claim here, involve[s] more than an adverse personnel action under the CSRA," and that defendants' actions "impacted not only [his] status as an employee but more importantly [his] status as an administrative law judge under the [APA]." Pl.'s Opp'n at 7. Hunt argues that the APA provides safeguards for administrative law judges to protect their judicial independence, including the requirement that before an agency increases or decreases an ALJ's pay level, it must obtain the approval of OPM. Hunt also asserts that because the Board dismissed his complaints for lack of jurisdiction, the CSRA does not provide a remedy for his claims. Consequently, Hunt maintains, this Court is able to exercise jurisdiction over this case. Hunt's arguments are without merit.

The APA's waiver of sovereign immunity is inapplicable here because Congress has prescribed a remedy for vindicating claims of adverse actions, such as a reduction in pay, taken against ALJs other than by filing a suit in this Court. Congress enacted the CSRA as part of a "comprehensive[] overhaul[]" of the civil service system. *Lindahl v. OPM*, 470 U.S. 768, 773 (1985). "A leading purpose of the the CSRA was to replace the haphazard arrangements for administrative and judicial review of personnel actions, part of the 'outdated patchwork of statutes and rules built up over almost a century' that was the civil service system." *United*

*States v. Fausto*, 484 U.S. 439, 444 (1988) (quoting S. Rep. No. 95-969, p.3 (1978)). The CSRA created "an elaborate 'new framework for evaluating adverse personnel actions against [federal employees].'" *Fausto*, 484 U.S. at 443 (quoting *Lindahl v. OPM*, 470 U.S. 768, 773 (1985)). Under the CSRA, a federal employee may seek relief from adverse personnel actions through an appeal to the Board and may obtain subsequent review of Board decisions in the Federal Circuit.

Recognizing the breadth of the statutory scheme, the D.C. Circuit has repeatedly held that the CSRA's exclusion of some personnel actions illustrates Congress's intent to preclude judicial review in this Court of both actions that are covered by the CSRA and those that are outside its bounds. *See e.g., Fornaro*, 416 F.3d at 66 ("[T]hese remedial provisions are exclusive, and may not be supplemented by the recognition of additional rights to judicial review having their source outside the CSRA."); *Spagnola v. Mathis*, 859 F.2d 223, 227 (D.C. Cir. 1988) (en banc) (per curiam) ("[I]t is the comprehensiveness of the statutory scheme involved, not the 'adequacy' of specific remedies thereunder, that counsels judicial abstention."); *Harrison v. Bowen*, 815 F.2d 1505, 1516 n.25 (D.C. Cir. 1987) ("[The CSRA] creates an extensive scheme regulating civil service personnel decisions" and courts should not "allow an employee to circumvent this detailed scheme governing federal employer-employee relations by suing under the more general APA.") (quotations omitted); *Gray v. Office of Personnel Mgt.,* 771 F. 2d 1504 (1985) (holding that the comprehensive remedial scheme established by Congress in the CSRA indicates a congressional intent to preclude judicial review under the APA of claims that should be reviewed administratively under the CSRA).

Given this law and the congressional intent underlying the CSRA, it is apparent that this Court does not have jurisdiction over Hunt's APA claims.[8] Hunt's argument that this Court has jurisdiction because the Board ruled that it was without jurisdiction is not convincing. Although, in both *Hunt I* and *Hunt II,* the Board determined that it did not have jurisdiction over Hunt's complaint, this determination was based on Hunt's inability to show that he experienced a reduction of pay in *Hunt I*, and his failure to bring his reduction of pay claims under the proper provision of the CSRA in *Hunt II*. The determination that the Board lacked jurisdiction was not based on the conclusion that the CSRA did not provide a remedy for claims for reductions in pay. Actions against ALJs, including reductions in pay, are appealable to the Board under 5 U.S.C. § 7521. But "[t]o invoke the Board's jurisdiction, an appellant must show a demonstrable loss, such as an actual reduction in pay." Def.'s Ex. 4 at 3 (citations omitted). The Board found that Hunt failed to make such a showing.[9] Accordingly, the Court is not persuaded by Hunt's

---

[8] To the extent that Hunt's complaint can be construed to challenge the classification of his position rather than a reduction of his pay, such a challenge is within the exclusive jurisdiction of the OPM. *See* 5 C.F.R. § 511.603; *see also Marcheggiani v. U.S. Dep't of Defense*, 90 M.S.P.R. 212 (MSPB 2001). Under 5 C.F.R. § 511.603(a)(1), "[a]n employee . . . may request an Office decision as to . . . [t]he appropriate occupational series or grade of the employee's official position." 5 C.F.R. § 511.603 (a)(1).

[9] In *Hunt I*, the Board noted that Hunt "does not argue that he actually suffered a personnel action [ ] enumerated in section 7521(b)," specifically a reduction in pay. Def.'s Ex. 1 at 3. Accordingly, the Board found that it lacked jurisdiction over Hunt's complaint. In *Hunt II*, Hunt again filed a complaint alleging a reduction in pay, but this time he alleged a violation of 5 U.S.C. 7512 and 7513(d). The Board again dismissed Hunt's complaint for lack of jurisdiction, stating that (1) because Hunt was an ALJ, any reduction in pay action must be initiated under section 7521, not section 7512, and (2) the forms documenting Hunt's pay "[did] not show any pay reduction and [Hunt] has not otherwise shown that his pay was reduced." Def.'s Mot. to Dismiss, Ex. 4 at 3.

9

argument that the Board's decisions in *Hunt I* and *Hunt II* demonstrate that the CSRA does not provide a remedy for his claims.[10]

Hunt's assertion that his status as an ALJ distinguishes him from other civil service employees that are covered by the CSRA is similarly unconvincing. According to Hunt, review under the APA remains available to ALJs despite the passage of the CSRA because an ALJ's need for decisional independence requires a higher degree of protection from coercion than is offered by the CSRA. The D.C. Circuit has specifically addressed this issue in *Gray v. Office of Personnel Mgmt.*, 771 F.2d 1504, 1510 (D.C. Cir. 1985).[11] In *Gray*, the D.C. Circuit noted the "pivotal importance of the work of the ALJ corps," but nevertheless declined "to confer special status on ALJs beyond that expressly provided by Congress." *Gray*, 771 F.2d at 1510. According to the D.C. Circuit, "had Congress intended to treat ALJS differently . . . it could have done so explicitly." *Id.* at 1511.

### 2. Constitutional Claims

Hunt also argues that the Department's reduction of the pay-grade for the position of CALJ without a hearing deprived him of a property right without due process. Hunt's claims for monetary damages arising out of the Department's allegedly unconstitutional acts must fail.

---

[10] Furthermore, even if the CSRA provides Hunt with no remedy for his reduction of pay claim, this Court would still not have jurisdiction to hear such a claim. As stated earlier, by enacting the CSRA, Congress clearly intended to provide an exclusive system for ensuring the rights of federal employees, whether through the provision of specific remedies or no remedies at all. *See LeBlanc v. United States*, 50 F.3d 1025, 1030 (Fed. Cir. 1995) ("The CSRA superseded preexisting remedies for all federal employees, even those who had no remedy or only limited remedies under the new system, for all types of personnel action within its scope.").

[11] While defendants discuss *Gray v. Office of Personnel Mgmt.*, 771 F.2d 1504, 1510 (D.C. Cir. 1985), in their motion to dismiss, Hunt fails to distinguish, discuss, or even cite *Gray* in his opposition to defendants' motion.

Hunt's argument essentially boils down to his contention that because "there is no CSRA remedy available for [his] injury, [he is] not foreclosed from seeking a *Bivens* remedy in this Court," Pl.'s Opp'n at 23, arising out of his alleged deprivation of property without due process. Defendants rejoin that the CSRA also provides the exclusive remedy for constitutional violations arising out of federal employment.

Defendants have the better argument. The fact that Hunt alleges constitutional violations does not take his claims beyond the remedial provisions of the CSRA. The D.C. Circuit has stated that "*Bivens* remedies [do not exist] for civil service employees and applicants who advance constitutional challenges to federal personnel actions." *Spagnola*, 859 F.2d at 230 (D.C. Cir. 1988) (en banc) (per curiam). "[D]ecision[s] concerning pay" fall within the statutory definition of "personnel actions" under the CSRA. 5 U.S.C. § 2302(a)(2)(A)(ix). Though courts have discretion to create damages remedies against federal officials for constitutional violations, they "must decline to exercise that discretion where 'special factors counsel[ ] hesitation' in doing so." *Wilson v. Libby*, 535 F.3d 697, 704 (D.C. Cir. 2008) (citing *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 396 (1971)); *Spagnola*, 859 F.2d at 226). One example of a "special factor" that militates against recognizing a *Bivens* remedy is the presence of an "elaborate remedial system" or a "comprehensive scheme," *see Bush v. Lucas*, 462 U.S. 367, 385, 388 (1983), which "suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations." *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988). In this Circuit, for "purposes of the special-factors analysis, the CSRA is a comprehensive statutory scheme precluding *Bivens* remedies." *Gerlich v. U.S. Dep't of Justice*, 659 F. Supp. 2d 1, 10 (D.D.C. 2009) (citing *Spagnola*, 859 F.2d at 229-30).

Even if the remedies afforded by the CSRA in this particular case are inadequate, as Hunt asserts, such a circumstance does not advance his position. The Supreme Court has recognized that

> [t]he question is not what remedy the court should provide for a wrong that would otherwise go unredressed. It is whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue. That question obviously cannot be answered simply by noting that existing remedies do not provide complete relief for the plaintiff.

*Bush*, 462 U.S. at 388; *see also Spagnola*, 859 F.2d at 227 (citing *Chilicky*, 487 U.S. at 423) ("[I]t is the comprehensiveness of the statutory scheme involved, not the 'adequacy' of specific remedies extended thereunder, that counsels judicial abstention."). Therefore, "a case-by-case examination of the particular administrative remedies available to a given plaintiff [is] unnecessary." *Id.* "*Spagnola* established that a *Bivens* remedy is precluded by the CSRA even when that scheme provides the plaintiff with 'no remedy whatsoever.'" *Gerlich*, 659 F. Supp. 2d at 11 (quoting *Spagnola*, 859 F.2d at 228).

Moreover, the Court does not agree with Hunt's contention that the CSRA provides him "no remedy for [his] . . . Constitutional claim." *See* Pl.'s Opp'n at 23. The CSRA provides a mechanism for challenging adverse personnel actions—among them personnel actions affecting pay—and prohibited personnel practices. Thus, Hunt's Fifth Amendment claim is cognizable under the CSRA.[12]

---

[12] Further, Hunt's contention that he was entitled to a "predetermination evidentiary hearing" is governed by the statutorily provided procedures in the CSRA. *See* 5 U.S.C. § 7521. To the extent that Hunt finds fault with the process he has experienced, Hunt's proper recourse is to follow the appellate procedures outlined in 5 U.S.C. §§ 7701-7703, which provide for judicial review by the United States Court of Appeals for the Federal Circuit.

Because Hunt seeks monetary damages as compensation for allegedly unconstitutional acts arising out of agency action that is properly within the scope of the CSRA, this Court does not have jurisdiction to review that action. Accordingly, Hunt's constitutional claim against the Department must be dismissed.

### 3. Discrimination and Retaliation Claims

It is not altogether clear that Hunt asserts a discrimination or retaliation claim against the Department. Construing Hunt's complaint liberally, however, the Court assumes that Hunt asserts an age discrimination claim and a retaliation claim against the Department based on the Department's alleged reduction in his compensation due to his age and its refusal to hire him as a temporary ALJ after learning that he filed a complaint with the Board. Defendants argue that Hunt cannot bring these claim because he has failed to exhaust his administrative remedies under the Age Discrimination in Employment Act ("ADEA"). Specifically, defendants contend that Hunt neither provided the Equal Employment Opportunity Commission ("EEOC") with notice of his intent to sue nor invoked the EEOC's administrative process. Although Hunt does not assert that he has exhausted his administrative remedies, he generally states that "allegations of age discrimination will be considered under the CSRA in a 'mixed' case . . . without referral to the EEOC." Pl.'s Opp'n at 9.

Although Hunt is correct that he does not have to file a notice with the EEOC, Hunt still has not exhausted his administrative remedies. Liberally construing Hunt's complaint as "mixed," that is, one containing "an adverse personnel action subject to appeal to the [Board] coupled with a claim that the action was motivated by discrimination," *see Butler v. West*, 164

13

F.3d 634, 638 (D.C. Cir. 1999), there is a carefully prescribed statutory framework that Hunt must follow in order to pursue his discrimination and retaliation claims in this Court.

Under this framework, the complainant has two paths he may follow: "[a]n aggrieved person may initially file a mixed case complaint with an agency . . . or [the complainant may file] an appeal on the same matter with the [Board] pursuant to 5 CFR 1201.151, but not both." 29 C.F.R. § 1614.302(b). If the complainant pursues an agency decision and is dissatisfied with the result, then within 30 days of receipt of the agency's final decision, he may appeal the matter to the Board, or file a civil action in district court. 29 C.F.R. § 1614.302(d)(1)(ii). If the complainant forgoes filing the agency complaint and appeals directly to the Board, an Administrative Judge makes an "initial decision" which becomes final 35 days after issuance, unless "any party files a petition for review" with the Board, or the Board reopens the case on its own motion. 5 C.F.R. § 1201.113. The Board may either deny a petition for review, at which point the decision becomes "final," 5 C.F.R. § 1201.113(b), or it may grant review. Once the Board's decision becomes final, the complainant may then "(1) . . . appeal the discrimination claim to the EEOC within 30 days, 5 C.F.R. § 1201.157; (2) appeal the entire claim to the appropriate district court within 30 days; or (3) appeal the nondiscrimination claim to the Court of Appeals for the Federal Circuit within 60 days. 5 U.S.C. § 7703(b)." *Taylor v. Mabus*, 685 F.Supp. 2d 94, 98 (D.D.C. 2010).

Hunt makes no assertion that he has pursued any of the paths available to resolve his claims. He merely asserts that he filed his discrimination and retaliation claims with the OSC.

Such a filing does not constitute exhaustion of administrative remedies.[13] Since Hunt fails to show that he has exhausted his administrative remedies, to the extent that Hunt asserts discrimination and retaliation claims against the Department, such claims must be dismissed.[14]

B.      **Hunt's Claims Against the Office of Special Counsel**

Hunt also alleges that the OSC's findings in *Hunt III* were not supported by fact or law, and its "affirmation of [the Department]'s unlawful taking without seeking a predetermination evidentiary hearing was arbitrary, capricious, not in accordance with law and denied [Hunt] his right to due process in violation of the Fifth Amendment." Compl. ¶ 25. Defendants again contend that this Court lacks subject matter jurisdiction to hear Hunt's claims.

The CSRA provides that "[t]he Special Counsel shall receive any allegations of a prohibited personnel practice and shall investigate the allegation to the extent necessary to determine whether there are reasonable grounds to believe that a prohibited personnel practice has occurred, exists, or is to be taken." 5 U.S.C. § 1214(a)(1)(A). Although this Court may have jurisdiction over a claim that the OSC failed to investigate Hunt's allegations, *see Weber v. United States*, 209 F.3d 756, 759 (D.C. Cir. 2000), it does not have jurisdiction to review the

---

[13]     Even assuming that filing a complaint of age discrimination with the OSC is a sufficient first step in this process, as previously stated, Hunt would have had to file his complaint in this Court within 30 days of the OSC's final decision, which he failed to do.

[14]     Defendants do not specify whether Hunt's discrimination and retaliation claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6). Judges in this district have not reached a consensus on the appropriate standard for motions to dismiss for failure to exhaust one's administrative remedies. *Compare Wiley v. Johnson*, 436 F. Supp. 2d 91, 94-95 (D.D.C. 2006) (EEOC exhaustion is jurisdictional), *with Camp v. District of Columbia*, No. 04-0234, 2006 WL 667956, *6, n.4 (D.D.C. Mar. 14, 2006) (EEOC exhaustion is not jurisdictional). The Court finds that the outcome in this case is the same under either Rule 12(b)(6) or Rule 12(b)(1).

OSC's decision on the merits. *See Wren v. Merit Syst. Protection Bd.*, 681 F.2d 867, 875 n.9 (D.C. Cir. 1982) ("It is . . . quite clear from the statutory language and corresponding legislative history that Congress did not mean to make the OSC's decisions to terminate or conduct an investigation or bring a proceeding before the Board reviewable on the merits."). Because Hunt's allegations against the OSC involve the merits of OSC's decision, and not its refusal to investigate his complaint, the Court does not have jurisdiction to hear Hunt's claims against the OSC. *See e.g., Carson v. U.S. Office of Special Counsel*, 2006 WL 785292, at *5 (D.D.C. March 27, 2006) ("[T]his court only has jurisdiction to review whether OSC conducted an investigation, it cannot pass on the merits of OSC's decision to terminate an investigation.").

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss [# 13] is granted. An appropriate order accompanies this memorandum opinion.

Henry H. Kennedy, Jr.
United States District Judge